UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JEROME BLIGE, ) | |
| MARSHELL BERNICE LEE, ) | |
| and the ESTATE OF SAUDI ) | |
| ARAI LEE, by and through ) | |
| MARSHELL BERNICE LEE, its ) | |
| Administrator, ) | |
| ) | |
| VERSUS ) | NO.: 4:24-cv-00131-RSB-CLR |
| ) | |
| ERNEST FERGUSON, ) | JURY TRIAL DEMANDED |
| IN HIS INDIVIDUAL CAPACITY; ) | |
| MACKENZIE RANDLE, IN HIS ) | |
| INDIVIDUAL CAPACITY; ) | |
| CITY OF SAVANNAH ) | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF THEIR
FIRST MOTION AND MEMORANDUM TO AMEND COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Jerome Blige, Marshell Bernice Lee, the parents of Saudi Lee, and the Estate of Saudi Lee ("Plaintiffs"), who now file their reply brief in support of their Motion for Leave to Amend Complaint. *Doc. 22*. The City of Savannah's ("City Defendants") motion should be dismissed on its face since the Amended Complaint was filed less than twenty-one (21) days of the defense's 12(b)(6) motion. *Doc. 14* (Defense 12(b)(6) Motion filed on September 13, 2024); *Doc. 22-2* (First Amended Complaint filed on September 26, 2024); *Fed. R. Civ. P. 15(a)(1)* (permitting amendment of complaint "as a matter of course" within twenty-one (21) days of service of an Answer or Rule 12 motion, whichever is earlier). In addition, the other arguments raised are legally meritless. This Court should order the First Amended Complaint, *Doc. 22-2*, to be the operative one against the City Defendants as a matter of course. In addition, this Court should grant leave to Plaintiffs amending their Complaint against Defendant Ernest Ferguson ("Defendant Ferguson") and adding Officer MacKenzie Randle ("Defendant Randle") as a defendant. In support, counsel states:

I.  **This Court Should Pretermit Consideration of City Defendants' Motion Because the Relief Sought is Not Available Under Governing Federal Law**

On June 21, 2014, Plaintiffs filed their original Complaint. *Doc. 1*. Named in the Complaint were the Mayor and Aldermen of the City of Savannah, Defendant Ferguson, and John Doe. *Id.* at 2. As will be explained in further detail below, Plaintiffs filed public records requests with the Savannah Police Department for the incident report, but were never given John Doe's name, thus were unable to identify him prior to filing.

1

On August 5, 2024, Defendant Ferguson filed an Answer in this case. *Doc. 8*.

The City Defendants have to date not filed an Answer. On September 13, 2024, the City Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12. *Doc. 14*. Thirteen days later—on September 26, 2024—Plaintiffs filed their Amended Complaint. As to the City Defendants, Plaintiffs specifically asserted their right to amend "'as a matter of course" because the City filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12, *Doc. 14*, less than twenty-one days prior to this filing. Fed. R. Civ. P. 15(a)(1)[1]." *Doc. 22*, at 1. Two pages later, Plaintiffs again write, "Because Plaintiffs filed their Amended Complaint before the expiration of the 21 days from the City's responsive pleading, their Complaint as to the City does not require leave of court. Fed. R. Civ. P. 15(a)(1)." *Id.*, at 3. In the next paragraph, Plaintiffs state they are "avail[ing] themselves of [the] right [to amend as a matter of course against the City Defendants.]" *Id.*, at 3.

At no point in their pleading do Plaintiffs seek leave from this Court to file the Amended Complaint against the City Defendants, nor did Plaintiffs represent that this motion is unopposed by the City Defendants. *Compare* Fed. R. Civ. P. 15(a)(2) (amending complaint after twenty-one-day period requires either consent of opposing party or leave of this Court). Plaintiffs only state they are filing their Amended Complaint against the City Defendants as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1).

As opposed to the City Defendants, because Defendant Ferguson had filed an Answer longer than twenty-one days prior, Plaintiffs had to file a motion for leave to amend the Complaint. Fed. R. Civ. P. 15(a)(2). Defendant Ferguson did not oppose the amended complaint based on a conversation with undersigned counsel, which was represented to this Court. *Doc. 22*, at 1-2; *see also Doc. 28*, (Counsel for Defendant Ferguson, in a monument to brevity, notes that he "does not object nor consent to Plaintiffs' Motion to Amend Complaint.").

The longstanding rule in the Eleventh Circuit is: "If the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer." *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1291 (11th Cir. 2007). *Accord* 6 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 1481 (3d ed. 2013) ("[I]f only some defendants file responsive pleadings, plaintiff still should be governed by the 21-day amendment period in Rule

---

[1] Plaintiffs' initial motion directed this Court to subsection (a)(1)(A) of Rule 15, when it should have stated Fed. R. Civ. P. 15(a)(1) generally, as subsection (B) controls when a specific defendant files a Rule 12 motion.

15(a)(1)(A) for pleading amendments regarding the nonresponding defendants."). This Rule was not affected by the 2009 change in language of Fed. R. Civ. P. 15(a),[2] and has been consistently applied by the Eleventh Circuit and district courts. *See, e.g.*, *Irele v. Griffin*, 65 F.4th 1280, 1286 (11th Cir. 2023) (reiterating *Williams* rule); *Daker v. Redfin Corp., Inc.*, 20-13598, 2021 U.S. App. LEXIS 33426, at *3-*4 (11th Cir. Nov. 10, 2021) (unpublished) (after reaffirming *Williams* rule, reversing district court's dismissal of amended complaint because the specific defendants objecting "never served [Plaintiff] a responsive pleading, so he was free to amend his original complaint at any time.").

On the other hand, because Defendant Ferguson filed his Answer on August 5, 2024, *Doc. 8*, and more than twenty-one days had passed at the time of the filing of the present motion, *Doc. 22*, Plaintiffs had to seek leave to amend the complaint. *Fed. R. Civ. P. 15(a)(2)* ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."). Upon discussion between undersigned counsel and Defendant Ferguson's counsel, there was no objection to Plaintiffs' motion to amend the complaint. *Doc. 22*, at 1-2.

Therefore, the defendants in this case were in different postures. As explicitly discussed and asserted in their pleading, Plaintiffs were amending the complaint as a matter of course against the City Defendants. *Doc. 22*, at 1-3. However, since leave was needed regarding Defendant Ferguson, to avoid confusion and for the sake of judicial efficiency, Plaintiffs simply combined their amendment as a matter of course against the City Defendants and their request for leave to amend as to Defendant Ferguson into one pleading. In this pleading, Plaintiffs indisputably and repeatedly assert their right to amend as a matter of course, and never seek leave

The City Defendants' contention that Plaintiffs somehow "waived" this right under Fed. R. Civ. P. 15(a)(1)—despite the numerous invocations of filing as a matter of course and not seeking permission from this Court or City Defendants' counsel to file the amended complaint—

---

[2] In 2007 at the time of the *Williams* decision, Fed. R. Civ. P. 15(a) stated that a "party had a right to amend a complaint as a matter of course any time before a responsive pleading was served." *AAA Cooper Transp. V. Wes-Park, Inc*., No. 1:11-cv-181, 2011 U.S. Dist. 2011 U.S. Dist. LEXIS 77888, at *4-*5 (M.D. Ala. July 18, 2011). The 2009 change to the rule reflects the present language that a plaintiff may amend as a matter of course if within twenty-one (21) days after service of a responsive pleading or motion under Fed. R. Civ. P. 12(b),(e), or (f). *Id.* Courts across the Eleventh Circuit have interpreted this change to be consistent with *Williams* – namely a Plaintiff may amend as a matter of course against a specific party amongst codefendants within twenty-one days of that specific party filing a responsive pleading or a Rule 12 motion. *Id.*; *accord O'Neill v. NYU Langone Med. Ctr.*, 1:22-cv-11, 2023 U.S. Dist. LEXIS 68106, *6-*7 (N.D. Ga. March 14, 2023) (same); *United States ex rel. Hildegarde Summerour v. Dermatology & Skin Cancer Prevention Ctr., Inc.*, 1:12-cv-184, 2013 U.S. Dist. LEXIS 208154 at *2-*5 (N.D. Ga. April 11, 2013) (same). The date on which each individual codefendant files an Answer or Rule 12 motion sets in motion the twenty-one day "matter of course" provision for the specific codefendant. *Id.*

is legally baseless and untenable. The only case cited by the City Defendants is *Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010). *Doc. 24*, at 2. In that case, there was only a single defendant, not multiple ones as there are here. *Coventry First*, 605 F.3d at 868-69. While mentioning Rule 15(a)(1) in passing, *see, Exhibit A* (Coventry First, LLC's Motion to Amend) at ¶¶ 9-10, Plaintiff filed a motion extensively arguing why leave to amend their pleadings should be given—the standard under Fed. R. Civ. P. 15(a)(2). *Id.*, at 6 ("Unless there is a substantial reason to deny leave to amend such as undue delay, bad faith or motive on the part of the movant, repeated failure to cure deficiencies, or futility of amendment, leave to amend should be freely granted."). The *Coventry* Plaintiffs continue that the equities support allowing amendment, as the single defendant would suffer no prejudice—again the test under Rule 15(a)(2). *Id*. The Eleventh Circuit held that the district court did not abuse its discretion "accept[ing] this invitation" to "review its proposed amendments" under the Fed. R. Civ. P. 15(a)(2) standard. *Coventry*, 605 F.3d at 869-70. The Court specifically noted that such a pleading was "unnecessary." *Id*. at 869.

The situation here could not be more different. Plaintiffs never argue that they should be granted leave to amend against the City Defendants under Rule 15(a)(2), nor invite this Court to evaluate whether such an amendment is proper under that rule. Instead, Plaintiffs conclusively and repeatedly assert their right to amend as a matter of course against the City Defendants. *Doc. 22*, at 1-3. They never invite this Court to make any ruling over whether leave for these amendments should be granted against the City Defendants. *Id*. However, such arguments under Fed. R. Civ. 15(a)(2) are made as to Defendant Ferguson, as more than twenty-one days passed since he filed his Answer and Plaintiffs must be granted leave by either opposing counsel or this Court. *Doc. 22*, at 1-5.

Merely combining the amendment as a matter of course against the City Defendants with the motion for leave as to Defendant Ferguson cannot be construed as a knowing waiver of rights; an invitation for this Court to apply the Rule 15(a)(2) rubric to the City Defendants and make a ruling or filing an "unnecessary" motion since leave was required as to Defendant Ferguson. Plaintiffs rather acted in furtherance of judicial efficiency and avoided confusion by not simultaneously filing an Amended Complaint along with a motion for leave. The "invited error" doctrine or waiver described by *Coventry* is entirely inapposite here.

Since Plaintiffs were entitled as a matter of course to amend their Complaint against the City Defendants, none of the arguments made in the Opposition about the futility of the

amendments are cognizable nor can be a basis of the relief sought. *Doc. 24*, at 1-7. The Eleventh Circuit has specifically "held that the district court lacks the discretion to deny an amendment as futile when the party has the right to amend as a matter of course under Rule 15(a)(1)." *Shaw v. Allen*, 701 Fed. Appx. 891, 894 (11th Cir. July 20, 2017) (citing *Williams*, 477 F.3d at 1292 & n.6); *McCathie v. Johnson & Johnson,* 2023 U.S. Dist. LEXIS 236775, *3, (S.D. Ga. Feb. 3, 2023) ("Because Plaintiff is entitled to amend as a matter of right, Defendants' futility argument is inapplicable. *See, e.g., Williams v. Bd. of Regents of Univ. System of Ga.*, 477 F.3d 1282, 1292, 1292 n. 6 (11th Cir. 2007) (finding district court lacks discretion to make futility determination where plaintiff is entitled to amend as a matter of course).").

Accordingly, this Court should pretermit considering the merits of any of the City Defendants' claims as to why amendment should not be allowed or would be futile, as Plaintiffs filed their Amended Complaint against the City Defendants within the Rule 15(a)(1) time period and explicitly relied upon that provision, not Rule 15(a)(2). "The proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss." *Alexander v. GlaxoSmithKline, LLC*, CIV.A. 15-2323, 2015 WL 5440994, at *3 (E.D. La. Sept. 14, 2015) (citing *Sansom Comm. v. Lynn*, 366 F. Supp. 1271, 1278 (E.D. Pa. 1973)).

II.  **The Statute of Limitations Against Defendant Randle has Not Expired Under Georgia Law**

"At the motion-to-dismiss stage, a complaint may be dismissed on the bases of a statute-of-limitations defense 'only if it appears **beyond a doubt** that Plaintiffs can prove no set of facts that toll the statute.'" *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.12 (11th Cir. 2005) (emphasis added). This rule warrants dismissal of the City Defendants' Opposition for two reasons. First, this case is not yet at "the motion-to-dismiss stage" because Plaintiffs timely filed an Amended Complaint against the City Defendants under Rule 15(a)(1) as a matter of course. *See supra* Point I.

Second, in §1983 actions, "state law generally determines tolling rules." *Salas v. Pierce*, 297 Fed. Appx. 874, 877 (11th Cir. 2008). *See also Wallace v. Kato*, 549 U.S. 384, 394 (2007) ("[In §1983 actions,] [w]e have generally referred to state law for tolling rules, just as we have for lengths of statutes of limitations."). While City Defendants are correct that Georgia has a two-year general personal injury statute of limitations, the Code enumerates circumstances when a Plaintiff is legally entitled to tolling.

Relevantly, Georgia law states:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the **victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime** committed in this state **shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years**, except as otherwise provided in Code Section 9-3-33.1.

O.C.G.A. §9-3-99 (emphasis added). Here, as buttressed by the District Attorney's Office's charging decision, Mr. Lee was the "victim of an alleged crime." The "facts and circumstances related to the commission of such alleged crime" form the basis of his First Amended Complaint against Defendant Randle. Consequently, the statute of limitations has not run for filing state tort claims against Defendant Randle as "the prosecution of such crime" has not "become final or otherwise terminated," O.C.G.A. §9-3-99, nor have six (6) years passed from the murder of Mr. Lee. This case clearly falls within Georgia's tolling provision.

The First Amended Complaint is timely under Georgia law against Defendant Randle, and thus timely before this Court.

### III. Plaintiffs Are Entitled to Equitable Tolling of the Statute of Limitations Because the Savannah Police Department and the City of Savannah Actively Thwarted Identification of Defendant Randle Prior to the Filing of the Complaint

The Savannah Police Department and City Defendants actions in concealing the identity of Defendant Randle until after the filing of the Original Complaint merit equitable tolling of the statute of limitations. "The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). "Equitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (emphasis in original). The Plaintiff bears the burden of showing tolling is appropriate. *Arce*, 434 F.3d at 1261.

While the City attempts to distract the Court by alleging the Plaintiffs could have filed their lawsuit earlier, the delay was in no way the fault of the Plaintiffs. Mr. Lee's family hired counsel less than one month after he was killed. *See, Exhibit B* (Letter of Representation from prior counsel). Beginning in November 2022, Plaintiffs repeatedly tried to identify Defendant Randle through open records requests to the Savannah Police Department and the City of Savannah. On November 8, 2022, Plaintiffs' prior counsel sent a public records request to the City of Savannah—

i.e. the City Defendants here—seeking "all information related to" the shooting with a list of requested documents,[3] including Ferguson's personnel file and the **personnel file of "any other personnel involved in the incident."** *Exhibit C*. On November 15, 2022, the City Defendants denied the request as to the investigation and "other personnel," claiming the records were exempt from Georgia's open records law since they were part of an ongoing investigation. *See, Exhibit D* (response from City Defendants to open records request and accompanying documents produced).

The City Defendants and Savannah Police did provide "initial reports." However, **none of these named or identified Defendant Randle**—indeed, the presence of a second officer on-scene is not even mentioned in the documents turned over. Plaintiffs only learned that a second officer was on-scene through hiring a private investigator to speak with witnesses who watched in shock as Mr. Lee was murdered.

Plaintiffs' counsel renewed the records request multiple times over the next year-and-a-half but attempts to identify the other officers present or involved in the stop or murder of Mr. Lee were repeatedly spurned by the City Defendants. *See, Exhibit E* (renewed requests in March, May, September and December of 2023, all met with absolute denial of any information that would have identified Defendant Randle). When told that the killing was being investigated by the District Attorney, Plaintiffs' counsel requested documents from them. *See, Exhibit F* (Jan. 3, 2024, letter to DA). In late January, Chief Investigator Vinson Jenkins rebuffed the request, claiming the case remained "under review." *See, Exhibit G* (Jan. 23, 2024 email from Jenkins). Ultimately, after Plaintiffs sought and received Defendant Ferguson's redacted employment file, *see, e.g. Exhibit H* (present Plaintiffs' counsel's June 6, 2024 open records request for Defendant Ferguson's employment file, which produced information relevant to his troubled history with the police department but nothing about the killing of Saudi Lee or Defendant Randle), due to the City Defendants' intransigence and secrecy, Plaintiffs were forced filed their Original Complaint identifying the second officer on the scene as "John Doe." *Doc. 1*, at ¶ 8.

On August 15, 2024, Plaintiffs received initial disclosures from Defendant Ferguson. *See, Exhibit I* (Defendant Ferguson's initial disclosures). For the first time, Plaintiffs received reports naming Defendant Randle as the other officer participating in the illegal detention and murder of Mr. Lee, as well as the body worn camera of the officers. *Id.* Plaintiffs promptly amended their

---
[3] These documents included: (1) incident reports; (2) 911 call recordings and transcripts; (3) Photographs; (4) Witness statements; (5) Video recordings pertaining to Saudi Lee's incident including body camera, dash camera, and surveillance camera videos; (6) Documents related to any internal investigations related to the incident; and (7) any other information regarding the June 24, 2022 incident with Saudi Lee. *Exhibit C*.

7

Complaint to specifically name Defendant Randle as the formerly unknown John Doe. *Doc. 22-2*, ¶ 7.

Bafflingly, the City Defendants now fault Plaintiffs for not seeking to identify Defendant Randle through an open records request. *Doc. 24*, at 4. For example, the City Defendants write to this Court:

> Officer's Randle's identity could have easily been obtained via an open record request to the Savannah Police Department ("SPD"). Although some documents would have been withheld from public disclosure due to the ongoing investigation of the incident, Georgia law requires SPD to at least provide any initial incident reports.

*Id.* This precise open records request was made to both the Savannah Police Department and the City Defendants. *Exhibit C*. The "initial incident reports" were produced, but nowhere is Defendant Randle listed or named. *Exhibit D*. Plaintiffs will assume that this argument is being made to this Court due to lack of knowledge of their clients' actions, rather than with intent to misinform this Court of the basic facts.

Here, the requirements for equitable tolling of the statute of limitations are met. *Arce v. Garcia*, 434 F.3d at 1261. First, since November of 2022, less than six months after the police shooting of Saudi Lee, Plaintiffs acted with due diligence to identify Defendant Randle. Open records requests were made, reviewed, renewed, and re-urged. The City Defendants had the documents identifying Defendant Randle in their possession but refused to provide them under O.C.G.A. § 50-18-72(a)(4). The initial reports did not contain Defendant Randle's name. *Exhibit D*. Plaintiffs exhausted their ability to properly identify Defendant Randle before filing the Complaint but were precluded from doing so by the City Defendants' actions. Second, the inability to identify Defendant Randle within two-years was plainly "beyond the control" of Plaintiffs, as the City Defendants intentionally withheld this information.

All the equities support tolling. This Court should not permit the City Defendants to withhold crucial information to timely properly name a party, and then avail themselves of their purposeful concealment. Nor should the Plaintiffs be punished for diligently pursuing Defendant Randle's identity but being stone-walled until after the statute of limitations passed. Further, given the fact that City Defendants and Defendant Randle knew of his involvement in Mr. Lee's murder since June 2022, including and up to the time of filing the Complaint with the name John Doe, there is no prejudice from late notice.

This Court should hold that to the extent any statute of limitations may have run, it was equitably tolled given the specific circumstances of this case.

**IV. The City Defendants Have No Standing to Raise Grounds to Dismiss Constitutional Claims Against Defendant Randle**

The Amended Complaint particularizes that Defendant Randle—who had previously been named as "John Doe"—is being sued only in his individual capacity. *Doc. 22-2*, at ¶7. Since the 1970s, the Supreme Court has held that a municipality cannot be held vicariously liable under the doctrine of respondeat superior for §1983 for the actions of an employee in his individual capacity only. *See, Monell v. Dep't of Social Services*, 436 U.S. 658, 693-94 (1978); *followed by, e.g., Naeh Media Group, LLC v. City of Lauderhill*, 23-11022, 2024 U.S. App. LEXIS 6358, at *6-*7 (11th Cir. March 18, 2024).

No counsel has enrolled for Defendant Randle. Unless the City Defendants are agreeing on the record to be bound by any judgment against Defendant Randle, they have no standing to challenge the constitutional claims against him in his individual capacity.[4]

Thus, the City Defendants have no standing to raise that the relation back doctrine as a basis to dismiss the Constitutional claims made against Defendant Randle. *See*, *Doc 24*, at 1, 3-4. When Defendant Randle appears or counsel enrolls on his behalf, they may decide whether to pursue these contentions or not. However, the City Defendants lack standing to advocate on behalf of party where they have no standing or interest.

**V. Plaintiffs' Newly Asserted Claims for a Second Amendment Violation Clearly State a Viable Claim for Relief**

The City Defendants' contention that Plaintiffs' Second Amendment Claim only protects an individual's right to carry a firearm for self-defense **in the home** is wildly untethered from and incongruent with clearly established Supreme Court law at the time of Mr. Lee's murder by the Defendants. *Doc. 24*, at 4-6. The City Defendants simply ignore *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), which had been handed down before Defendant Ferguson shot Mr. Lee down in the middle of a street. There, the Supreme Court struck down New York's law prohibiting individuals from publicly carrying weapons—necessarily outside the home—unless the person demonstrated "a special need for self-defense." *Id*. The Supreme Court reaffirmed that "the Second and Fourteenth Amendments protect an individual right to keep and bear arms for self-defense." *Id.* at 17. "In keeping with *Heller*," *id*., the Supreme Court found that the Constitution "presumptively protects" possessing a firearm—including outside the home—unless

---

[4] Plaintiffs concede the State claims are in a different posture since respondeat superior is applicable to those.

9

the Government can "demonstrate the regulation is consistent with this Nation's historical traditional of firearm regulation." *Id*.

Based on *Heller* and *McDonald*, the Supreme Court **at length explicitly rejected** the City Defendants' assertion that the Second Amendment only applies inside the home:

> Moreover, confining the right to "bear" arms to the home would make little sense given that self-defense is "the *central component* of the Second Amendment right itself." *Heller*, 554 U. S., at 599. See also *McDonald*, 561 U. S., at 767. After all, the Second Amendment guarantees an "individual right to possess and carry weapons in case of confrontation," *Heller*, 554 U. S., at 592, and confrontation can surely take place outside the home.
>
> Although we remarked in *Heller* that the need for armed self-defense is perhaps "most acute" in the home, *id*., at 628, 128 S. Ct. 2783, 171 L. Ed. 2d 637, we did not suggest that the need was insignificant elsewhere. Many Americans hazard greater danger outside the home than in it. See *Moore* v. *Madigan*, 702 F. 3d 933, 937 (CA7 2012) ("[A] Chicagoan is a good deal more likely to be attacked on a sidewalk in a rough neighborhood than in his apartment on the 35th floor of the Park Tower"). The text of the Second Amendment reflects that reality.
>
> The Second Amendment's plain text thus presumptively guarantees petitioners Koch and Nash a right to "bear" arms in public for self-defense.

*Bruen*, 597 U.S. at 32-33 (emphasis added).

On April 12, 2022, the amended version of O.C.G.A. §16-11-129 went into effect permitting persons to carry handguns in public without needing a permit so long as they legally could possess a firearm, e.g. they are not a felon. Mr. Lee was able to legally possess a firearm. As pled in the Amended Complaint, on June 24, 2022, Mr. Lee was legally exercising his Second Amendment rights. Defendants Randle and Ferguson unconstitutionally detained and retaliated against Mr. Lee, ultimately murdering him, for availing himself of his Constitutional right. *Doc. 22*, ¶¶115-120. When taking all facts in the Amended Complaint as true and all inferences for Plaintiffs,[5] while acting under the color of law, Defendant Ferguson and Defendant Randle violated Mr. Lee's Constitutional rights creating a federal cause of action under 42 U.S.C. §1983. The City Defendants' contention that Saudi Lee had no Second Amendment rights to which Ferguson and Randle should abide have no legal basis, and the City Defendants cite to no authority for its assertion.

### VI. Defendants Cannot Rely on an Affirmative Defense at the Pleading Stage, and the Facts Support the Denial of Immunity

Immunity—which is an affirmative defense— is inappropriate to be determined at the pleading stage because it requires consideration of evidence outside the pleadings.

---

[5] *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).

*Alston v. Eastman*, 2019 U.S. Dist. LEXIS 234883, at *6 (N.D. Ga. Apr. 16, 2019); *see also, Basanite Indus., LLC v. Upstate Custom Prods., LLC*, 2024 U.S. Dist. LEXIS 94475, at *19 (S.D. Fla. May 28, 2024). At this stage, this Court favors the Plaintiffs with all reasonable inferences from the allegations in the complaint. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). Whether the Defendant Ferguson and Defendant Randle are cloaked in immunity is a question of law that should be determined once discovery is conducted, and this Court is not "bound to accept as true a legal conclusion" that they will receive immunity simply because Defendants have "couched [it] as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986).

1. The City Defendants

The GTCA defines a "state government entity" as "a state office, agency, authority, department, commission, board, division, instrumentality, or institution." O.C.G.A. § 50-21-22(6)); see also, *Hinton v. Upton*, 2023 U.S. Dist. LEXIS 53356, at *13 (S.D. Ga. Mar. 28, 2023). Though the general rule is that government entities in Georgia enjoy sovereign immunity, it is not guaranteed in every circumstance. For example, in *Williams v. Dep't of Corr.,* the Georgia Department of Corrections contracted with Athens-Clarke County for the county to house state prisoners for $10 per day. 481 S.E.2d 272, 274 (Ga. Ct. App. 1997). When evaluating whether the GTCA protected a county official from liability while supervising inmates, the Georgia Court of Appeals did not resolve whether the county acted as an independent contractor or an agent of the state, leaving this issue for the jury and noting that "[s]erving concurrently as an agent and as an independent contractor is not mutually exclusive." *Id*. at 276. More facts must be established before a determination can be made about whether the City should be granted immunity.

2. Defendant Ferguson and Defendant Randle

Plaintiffs first object to the City Defendants repeatedly arguing on behalf of Defendant Randle in a pleading supposedly only brought by the City Defendants, as the City Defendants have no standing to do so. *See supra* at Point IV. Nevertheless, neither Defendant Randle nor Defendant Ferguson's immunity is guaranteed, and neither is ripe for determination at this stage. The Georgia Constitution provides official immunity for officers acting in their individual capacities unless (1) an officer causes injuries through the negligent performance or failure to perform their ministerial duties or (2) an officer acts "with actual malice or with actual intent to cause injury in the performance of their official functions," whether discretionary or ministerial. *Mommies Props.,*

*LLC v. Semanson,* 366 Ga. App. 153, 880 S.E.2d 376, 383 (Ga. Ct. App. 2022); *Siegrist v. Herhold,* 365 Ga. App. 828, 880 S.E.2d 336, 338-39 (Ga. Ct. App. 2022) ("The term 'official functions' means 'any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts.'" "[The distinction between discretionary and ministerial acts does not completely foreclose [the County Employees'] potential liability; [they] may be held liable if [the] discretionary act was malicious" or taken with an intent to injure." *Wyno v. Lowndes Cty.*, 305 Ga. 523, 531 (2019); *Roper v. Greenway, 294 Ga.* 112, 116 (2013) (finding that the distinction between discretionary and ministerial acts does not completely foreclose potential liability; he may be held liable if his discretionary act was malicious).

Here, whether Defendant Ferguson and Defendant Randle's acts were ministerial or discretionary is not an issue to be decided at the pleading stage, as such a determination requires facts outside of the record. *Wyno v. Lowndes Cty.*, 305 Ga. 531 (relying on explanations of these duties by the County Employees in their depositions). Plaintiffs contend that their failure to render aid is a ministerial duty as pled in the amended complaint. As to any other state law claim, Defendant Randle and Defendant Ferguson certainly acted with actual malice. Plaintiffs allege that Defendant Randle and Defendant Ferguson willfully, intentionally conspired before stopping Mr. Lee to make sure he was somewhere alone out of the sight of others. *Doc. 22-2,* at 18-19. Defendant Randle and Defendant Ferguson wanted Mr. Lee alone and out of the sight of others because they had malicious intent to harm him, which they did. Plaintiffs have met their pleading burden by sufficiently alleging that Defendant Randle and Defendant Ferguson acted with actual malice and intent. *Alexander v. LeNcrerot*, Civil Action No. 1:21-cv-04846-SDG, 2023 U.S. Dist. LEXIS 141098, at *18 (N.D. Ga. Aug. 14, 2023). Ultimately, this is a question for the trier of fact and is not yet ripe for determination by the Court.

## VII. Defendants' Motions to Strike Should be Denied

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. *Fed. R. Civ. P. 12(f)*. Due to their drastic nature, however, motions to strike are disfavored. *See Thompson v. Kindred Nursing Centers East, LLC,* 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). Motions to strike are usually denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.; see also In re Southeast Banking Corp. Sec. & Loan Loss Reserves Litig.,* 147 F. Supp. 2d 1348, 1355 (S.D. Fla. 2001), *Reyher v. Trans World Airlines, Inc.*,

881 F. Supp. 574, 576 (M.D. Fla. 1995) (finding that a motion to strike should only be granted if "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."). Although a court may strike from a pleading any allegation that **cannot possibly relate** to the controversy, courts "must treat all well pleaded facts as admitted and cannot consider matters beyond the pleadings." *Reyher,* 881 F. Supp. at 576 (emphasis added).

"Prejudice results when the matter complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party." *Capitol Indem. Corp. v. Tranel Developments, Inc.,* 144 F.R.D. 346, 347 (N.D. Ill. 1992). Mere assertions by the moving party that he or she is prejudiced are insufficient. *See Fleischer v. A.A.P., Inc.,* 180 F.Supp. 717, 721 (S.D.N.Y. 1959) (stating that prejudice is not assumed simply by the inclusion of a verbose, conclusory, or evidentiary matter).

An "immaterial matter" is one that has no important relationship to the claim or defense and an "impertinent" matter is one that does not pertain to the issue(s) in question. *S.D. v. St. Johns Cty. Sch. Dist.*, 2009 U.S. Dist. LEXIS 62013, at *3-4 (M.D. Fla. July 7, 2009), citing *126th Avenue Landfill, Inc. v. Pinellas County,* No. 8:09-CV-307-T-33TBM, 2009 U.S. Dist. LEXIS 49956, 2009 WL 1544030, at *2-3 (M.D. Fla. June 3, 2009). An allegation is immaterial if it has no value in developing the issues of the case. *Oaks v. City of Fairhope, Alabama*, 515 F. Supp. 1004, 1032 (S.D. Ala. 1981) (citing 2A, Moore's Federal Practice P 12.21(1) at 2420 (2d ed. 1979)); *see also Blake v. Batmasian*, 318 F.R.D. 698, 700 n.2 (S.D. Fla. 2017). Generally, motions to strike allegedly immaterial matters are not favored and such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues to be litigated. *United States Dental Instit. v. American Ass'n of Orthodontists,* 396 F.Supp. 565, 583 (N.D. III. 1975).

An allegation is impertinent if it is irrelevant to the issues and are not properly in issue between the parties. *Blake v. Batmasian*, 318 F.R.D. 700, citing 2 Moore's Federal Practice, pp. 2312-13. "Impertinence" consists of any allegation "not relevant" to the issues "involved in the action and which could not be put in issue or be given in evidence between the parties." 2A, Moore's Federal Practice, supra, at 2421-25; *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976). *See also Narragansett Tribe of Indians v. Southern R. I. Land Devel.*, 418 F. Supp. 798, 801-02 (D.R.I.1976).

The word "scandalous" in Rule 12(f) generally refers to any allegation that "unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Khalid Bin Talal v. E.F. Hutton & Co.,* 720 F. Supp. 671, 686 (N.D. Ill. 1989) (*quotations and citations omitted*); *see also* 2-12 MOORE'S FEDERAL PRACTICE § 12.37[3] (3d ed. 2002). In addition, "it is not enough that the matter offends the sensibilities of the objecting party if the challenged allegations describe acts or events that are relevant to the action." Wright & Miller, *supra,* at 465-66. In *Gateway Bottling, Inc. v. Dad's Rootbeer Co.,* the court discussed the problem with striking scandalous matters as follows:

> To strike material as scandalous it must be obviously false and unrelated to the subject matter of the action. [. . .] The facts. . . may be unpleasant for plaintiff to have on the record and they certainly contain charges of reprehensible conduct but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action or a defense. Such, for example, are the facts concerning a divorce for adultery. These may be scandalous and annoying and prejudicial to the accused party but plaintiff or defendant is certainly entitled to plead them.

53 F.R.D. 585, 588 (W.D. Pa.1971); *see also Talbot v. Robert Matthews Distrib. Co.,* 961 F.2d 654, 664 (7th Cir. 1992) (striking as scandalous paragraphs in the complaint that alleged the defendants in that action intentionally caused a salmonella outbreak that killed and injured people in order to deprive the plaintiffs of their jobs at a dairy); *Alvarado-Morales v. Digital Equip. Corp.,* 843 F.2d 613, 618 (1st Cir. 1988) (striking from a complaint superfluous descriptions that compared an employment resignation process to a "concentration camp" where the plaintiffs were "brainwashed" and "tortured"); *S.E.C. v. Lauer,* No. 03-80612-CIV-MARRA, 2007 U.S. Dist. LEXIS 37678, 2007 WL 1393917, at *2 (S.D. Fla. April 30, 2007) (striking as scandalous a letter that accused attorneys of immoral and unethical conduct without any legitimate basis).

Initially, the Defendants have only made conclusory statements, unsupported by law or argument, which should not be considered. Nevertheless, their conclusory allegations are wrong. Plaintiff takes each of the Defendants' motions in turn:

1. Paragraphs 9, 29-30, and 40 do not contain allegations that are "impertinent and needlessly scandalous."

None of these paragraphs are obviously false or unrelated to the subject matter of the action, nor are they in "repulsive language that detracts from the dignity of the Court." *See Khalid Bin Talal,* 720 F. Supp. at 686. Thus, they should not be struck.

   a. *Paragraph 9*

Paragraph 9 contains the last words spoken by Saudi Lee to his mother, which illustrate both his state of mind at the time of the incident, as well as the injury suffered by Plaintiffs. These

words are very relevant to the relationship shared between Mr. Lee and his mother, and the loss she has experienced (which is detailed in Paragraph 173 of the Amended Complaint, which the City has not moved to strike). *Doc. 22.* Additionally, there is nothing scandalous about this paragraph. Just because it may offend or be unpleasant to the Defendants does not make it scandalous. *Gateway Bottling, Inc.* at 588. To be struck, it must be obviously false and completely unrelated to the matter of the action. *Id.*; see also, *Thompson v. Kindred Nursing Centers East.* at 1348. In a divorce action, it is not scandalous to speak of the adultery, *Gateway Bottling, Inc.* at 588.; similarly here, in a death case, Plaintiffs are certainly entitled to speak of and plead the love they lost. This paragraph should not be struck.

    *b. Paragraphs 29-30*

Paragraphs 29-30 describe Mr. Lee's last moments. They describe the obvious suffering that Mr. Lee endured after he was shot in the back and neck by Defendant Ferguson, which goes directly to the damages for which the Plaintiffs are entitled to receive. While these paragraphs are perhaps difficult to read, they are entirely factual, completely relevant to these proceedings, and have great value in developing the issues of the case. *Oaks v. City of Fairhope, Alabama* at 1032. They should not be struck and the motion to strike should be denied.

    *c. Paragraph 40*

Paragraph 40 outlines the criminal charges Defendant Ferguson was indicted on related to the shooting death of Mr. Lee. While not dispositive as to liability—as made clear in the footnote to the paragraph in the amended complaint—the fact that a grand jury indicted Defendant Ferguson on eight charges based on the same exact transaction or occurrence makes it highly relevant. This would only be scandalous if it was false or exaggerated, which it is not. Thus, it should not be struck.

2. Paragraphs 75-79 are relevant to Plaintiffs' claims and do not prejudice Defendant Ferguson.

Paragraphs 75-79 are entirely relevant to these proceedings. First, they speak to the continued pattern of bad behavior that Defendant Ferguson has repeatedly exhibited, demonstrating further that the City Defendants were negligent in its hiring, training, and supervision. Additionally, they confirm that Defendant Ferguson is— and has been— repeatedly dishonest, as is outlined in numerous other paragraphs of the amended complaint. His lack of truthfulness is very relevant, as is his propensity for making dangerous choices.

For these paragraphs to prejudice Defendant Ferguson, they would have to have the "effect of confusing the issues" or be "so lengthy and complex" that they put "an undue burden on the responding party." *Capitol Indem. Corp. v. Tranel Developments, Inc.,* 144 F.R.D. 347. These bare assertions by the City Defendants that another Defendant might be prejudiced are insufficient. *See Fleischer v. A.A.P., Inc.,* 180 F.Supp. 721. Here, the issues are not confused, lengthened, or made more complex by these four short paragraphs. The City Defendants simply stating it does not make it so. The motion to strike should be denied.

3. Paragraphs 117-118 contain allegations related to the facts of this case, and are deeply engrained in this nation's jurisprudence and history

The City Defendants allege that paragraphs 117-118 "have no relation" to the facts of the case and are "clearly intended to unnecessarily inject an aspect of racial animus into this case." This is an interesting spin when these paragraphs cite to *McDonald*, which the City Defendants incorrectly contend was only about home defense. The Supreme Court in *McDonald* went to great lengths to narrate the historical significance of Black Americans having the right to possess firearms and detailed especially the importance of Black Americans needing firearms for self-defense purposes. *See McDonald*, 561 U.S. at 857. In fact, numerous pages within the opinion outline the racial implications embedded within the history of the Second Amendment jurisprudence. If the Supreme Court found these facts so relevant as to devote a huge, overarching portion of its decision to this history of bearing arms, it is nonsensical that two short paragraphs here would not be relevant to a claim about the denial of a right to bear arms. The motion to strike should be denied.

## CONCLUSION

Plaintiffs respectfully request that this Court order the First Amended Complaint, *Doc. 22-2*, be filed as the operative complaint against the City Defendants pursuant to Plaintiffs' right to amend as a matter of course under Fed. R. Civ. P. 15(a)(1), grant leave to Plaintiffs amending their Complaint against Defendant Ernest Ferguson and adding Defendant Randle as a defendant, and set a discovery schedule. Respectfully submitted this 1st day of November, 2024.

THE CLAIBORNE FIRM, P.C.

_____
WILLIAM R. CLAIBORNE
Georgia Bar Number: 126363
DAVID J. UTTER
Georgia Bar Number: 723144
410 East Bay Street
Savannah, Georgia 31401

(912) 236-9559 Telephone
(912) 236-1884 Facsimile
will@claibornefirm.com
david@claibornefirm.com

*/s/ Christopher J. Murell*
Christopher J. Murell
Georgia Bar Number: 195116
Meghan K. Matt*
Louisiana Bar Number: 39975
MURELL LAW FIRM
2831 St. Claude Avenue
New Orleans, Louisiana 70117
(504) 717-1297: Christopher
(225) 413-0463: Meghan
(504) 233-6691 Facsimile
chris@murell.law
meghan@murell.law
*Admitted pro hac vice*
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and filed electronically with the Clerk of Court's CM/ECF system.

Respectfully submitted this 1st day of November, 2024.

_____
WILLIAM R. CLAIBORNE