**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| **JEROME BLIGE, MARSHELL** ) <br> **BERNICE LEE, and the ESTATE OF** ) <br> **SAUDI ARAI LEE,** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br> **vs.** ) <br> ) <br> **ERNEST FERGUSON IN HIS** ) <br> **INDIVIDUAL CAPACITY;** ) <br> **MACKENZIE RANDLE IN HIS** ) <br> **INDIVIDUAL CAPACITY; CITY OF** ) <br> **SAVANNAH,** ) <br> ) <br>     **Defendants.** ) | **Civil Action No.: 4:24-cv-00131-RSB-CLR** |

<u>**MEMORANDUM IN SUPPORT OF THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

NOW COMES Defendant The Mayor and Aldermen of the City of Savannah (incorrectly named herein as City of Savannah and hereafter referred to as "City of Savannah") and files this Memorandum in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint ("Amended Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

This case arises out of an officer-involved shooting that resulted in the death of Saudi Arai Lee ("Mr. Lee"). The Mr. Lee's parents, Marshell Bernice Lee and Jerome Blige, and the Estate of Saudi Lee (collectively, "Plaintiffs") have brought claims against the City of Savannah and two police officers involved in the shooting under 42 U.S.C. § 1983 and Georgia state law. (*See* Doc. 80, Amended Complaint). As will be discussed below, the Amended Complaint fails to allege any

1

viable claims for relief against the City of Savannah and it should be dismissed from this case entirely.

## II.    RELEVANT ALLEGATIONS

On June 24, 2022, Mr. Lee was walking within the Carver Village neighborhood of Savannah, Georgia when he was approached by two police officers from the Savannah Police Department, Defendants Ernest Ferguson ("Ferguson") and Mackenzie Randle ("Randle"). (Ex. A, Ferguson Body Cam at 01:36). Ferguson initially made contact with Mr. Lee and let him know that "everything's good." (Ex. A, Ferguson Body Cam at 01:35-01:40). Mr. Lee then approached Ferguson and acted as if he was going to show him his "weapon's license." (*Id.* at 01:40-01:44). As Ferguson reaches for the license, Mr. Lee unholsters a pistol from his waistband, begins to back away and states, "you're going to have to kill me[1]." (*Id.* at 01:44-01:46). Mr. Lee then runs in the direction of Randle with his gun in the "low ready" position and pointed in Officer Randle's direction. (*Id.* at 01:46-01:47; Ex. B, Randle Body Cam at 01:43-01:47; Ex. C, Body Cam Screenshots[2]). As Mr. Lee moves towards Officer Randle, Ferguson fires his weapon and fatally strikes Mr. Lee. (Ex. A, Ferguson Body Cam at 01:47-01:50; Ex. B, Randle Body Cam at 01:43-01:47). **WARNING: THE BODY CAM FOOTAGE IS GRAPHIC AFTER THIS POINT.** Almost immediately after the shooting, Ferguson and Randle call for an ambulance and begin rendering first aid to Mr. Lee. (Ex. A, Ferguson Body Cam at 01:58-03:52; Ex. B, Randle Body Cam at 02:20-03:30). Ultimately, Mr. Lee succumbed to his injuries. (Doc 80, ¶ 36).

---

[1] The Amended Complaint alleges that Mr. Lee exclaimed "You're about to kill me!" (Doc. 80, ¶ 22). This allegation is clearly contradicted by Ferguson's body cam footage.

[2] Attached as Exhibit "C" are screenshots from Ferguson and Randle's body camera footage depicting Decedent's gun in the "low ready" position while facing Randle's direction.

III.    **LEGAL ARGUMENTS AND CITATIONS TO AUTHORITY**

A.    <u>**Standard of Review.**</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. Rule 8(a) of the Federal Rules of Civil Procedure requires the Amended Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Ordinarily, courts are limited to reviewing the four corners of the complaint in ruling on a motion to dismiss, must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016). "If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss generally must be converted into a motion for summary judgment." *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). The two exceptions to this conversion rule are "(1) the incorporation-by-reference doctrine and (2) judicial notice." *Id.*

Under the doctrine of incorporation-by-reference, courts may consider evidence attached to a motion to dismiss without turning it into a motion for summary judgment if "(1) 'the plaintiff refers to certain documents in the complaint,' (2) those documents are 'central to the plaintiff's claim,' and (3) the documents' contents are undisputed." *Baker*, 67 F.4th at 1276. In a recent opinion, the Eleventh Circuit Court of Appeals held that the incorporation-by-reference doctrine applies to body camera footage that clearly depicts the events that are central to a plaintiff's claims

even if it is not expressly referenced in the complaint. *Johnson v. City of Atlanta,* 107 F.4th 1292, 1300 (2024).

Here, there can be no dispute that Defendants' body camera footage may be properly considered by the Court under the doctrine of incorporation-by-reference as it clearly captures the events that are central to Plaintiffs' claims – *i.e.,* the shooting incident – and its authenticity cannot reasonably be challenged. As demonstrated above, there are several instances wherein the body camera footage clearly and obviously contradicts the allegations set forth in Plaintiffs' Amended Complaint. As a result, the U.S. Supreme Court has held that this Court must "accept the video's depiction instead of the complaint's account, and view the facts in the light depicted by the video" when considering this motion to dismiss. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

**B.**    **Plaintiff's claims against the City of Savannah under 42 U.S.C. § 1983 should be dismissed because Plaintiffs have failed to plead an underlying constitutional violation.**

In this case, Plaintiffs have asserted claims against the City of Savannah under 42 U.S.C. § 1983 for Retaliation (Count V), Negligent Hiring and Retention (Count VI) and Failure to Train and Supervise (Count VII) arising out of the alleged violation of the Mr. Lee's rights under the Second, Fourth and Fourteenth Amendments. (Doc. 34, ¶ 121-147). As will be shown, the Amended Complaint fails to allege a violation of Mr. Lee's constitutional rights, and thus Plaintiffs' § 1983 claims against the City of Savannah must also fail. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (concluding that when no constitutional violation is demonstrated, there is no basis for which to hold a municipality liable).

   *i.*    *Fourteenth Amendment – Excessive Force*

The Fourteenth Amendment's Due Process Clause forbids the use of excessive force against ***pretrial detainees***. *Ireland v. Prummell*, 53 F.4th 1274, 1296 (11th Cir. 2022) (emphasis added). In this case, there are no allegations that the Mr. Lee was a pretrial detainee at the time of

the incident. Accordingly, Plaintiffs' *Monell* claims should be dismissed to the extent they are premised upon a violation of Mr. Lee's Fourteenth Amendment rights with respect to the alleged use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 388 (1989) (the use of excessive force "in the course of making an arrest, investigatory stop, or other seizure" is properly analyzed under the Fourth Amendment).

  *ii.*   <u>Fourth Amendment – Excessive Force</u>

  A claim that law enforcement used excessive force in the course of an arrest, an investigatory stop or any other seizure of a free citizen is analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham*, 490 U.S. 386. As this Court has previously held:

> This inquiry requires courts to "slosh [their] way through the fact bound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Consequently, a court must "look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009); *see also Graham*, 490 U.S. at 396 (use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). Additionally, a court must take into account that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397. Generally, courts do not "second-guess the decisions made by police officers in the field." *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003).

*Harris v. Morris*, No. 4:18-cv-00040, 2020 U.S. Dist. LEXIS 50316 at *12 (S.D. Ga. Feb. 5, 2020).

  To assist in determining reasonableness, the Eleventh Circuit has established three factors that courts may consider:

> [Whether the officer:] (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible.

*Morton v. Kirkwood*, 707 F.3d 1276, 1281 (11th Cir. 2013) (internal quotations omitted). However, the Eleventh Circuit has emphasized that these facts should not be applied mechanically, nor are they prerequisites to the lawful application of deadly force. *Id.*; *Penley v. Eslinger*, 605 F.3d 843, 850 (11th Cir. 2010); *see also Scott*, 550 U.S. at 382. (explaining the elements are not "a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'"). Instead, courts must still look to the totality of the circumstances to determine whether the defendant's actions were objectively reasonable. *Morton*, 707 F.3d at 1281.

In this case, the facts and circumstances of the shooting incident demonstrate that Ferguson's use of deadly force was reasonable. The body camera footage shows the Mr. Lee attempting to distract Ferguson by holding out his wallet and stating that he has a weapons permit. (Ex. A, Ferguson Body Cam at 01:39-01:42). Instead of showing the permit, as requested by Ferguson, the Mr. Lee, in a matter of seconds, unholsters his gun, backs away from Ferguson with the gun in his hand, and states "you're going to have to kill me." (*Id.* at 01:42-01:45). Based on this statement and the Mr. Lee's aggressive behavior, it was reasonable for Ferguson to believe that the Mr. Lee intended on engaging in a shootout with him and Officer Randle. As shown in the attached screenshots from the body camera footage, the Mr. Lee is clearly seen looking in Randle's direction with his gun at the "low-ready" position. (Ex. C, Body Cam Screenshots).

This left Ferguson with a split-second decision – do nothing, which would have presented the Mr. Lee with an opportunity to fire his gun at the officers and others standing nearby or take action to neutralize what reasonably appeared to be a genuine threat to his safety and the safety of others. This is precisely the circumstance in which this Court should refrain from second guessing the decision made by Ferguson during what was very clearly a tense, uncertain and rapidly evolving situation. *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 821 (11th Cir. 2010) ("[T]he law

does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect."); *Davis v. Edwards*, 779 Fed. Appx. 691, 696 (11th Cir. 2019); *Robinson v. City of Huntsville*, 2021 U.S. Dist. LEXIS 199094 at *9-11 (N.D. Ala. Oct. 15, 2021) (reasonable use of deadly force where plaintiff shot while reaching for the handle of her firearm).

Because the body camera footage from the incident demonstrates that Ferguson's use of force was reasonable under the circumstances, Plaintiffs' claims against the City of Savannah should be dismissed to the extent it is based on a violation of Mr. Lee's Fourth Amendment rights.

    iii.    <u>Fourteenth Amendment - Deliberate Indifference to Medical Needs</u>

The Fourteenth Amendment requires government officials to provide medical care to individuals who have been injured during apprehension by the police. *Valderrama v. Rousseau*, 790 F.3d 1108, 1116 (11th Cir. 2015). "To prevail on a § 1983 claim alleging a violation of that right, a plaintiff 'must satisfy both an objective and a subjective inquiry.'" *Id.* (quoting *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). The objective inquiry requires plaintiff to demonstrate an objectively serious medical need[3]. *Id.* With respect to the subjective inquiry, the plaintiff must demonstrate that the officer was deliberately indifferent to plaintiff's serious medical needs. *Id.* "More specifically, the plaintiff must present, for each officer, evidence from which a reasonable jury could conclude that (1) the officer was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) the officer actually drew that inference, (3) the officer disregarded the risk of serious harm, and (4) the officer's conduct amounted to more than gross negligence." *Valderrama*, 780 F.3d 1108 at 1116.

---

[3] The City of Savannah does not dispute that the Amended Complaint adequately alleges the existence of an objectively serious medical need.

The body camera footage of the incident affirmatively demonstrates that Ferguson and Randle were not deliberately indifferent to Mr. Lee's medical needs. Within seconds after the shooting occurs, Ferguson radios dispatch to send EMS to the scene. (Ex A, Ferguson Body Cam at 01:57). Ferguson then immediately takes action to administer first aid by employing a compression bandage on Mr. Lee's gunshot wounds and administering CPR. (Ex. A, Ferguson Body Cam at 02:00 to 07:26). Randle assisted Ferguson by rushing to grab compression bandages from Ferguson's vehicle and attempting to control the gathering crowd of citizens. (Ex. B, Randle Body Cam at 02:20-03:30). As confirmed by video evidence, Ferguson and Randle clearly did not disregard Mr. Lee's serious need for medical attention and certainly did not act in a grossly negligent manner. Accordingly, Plaintiffs have failed to state a claim for a violation of Mr. Lee's Fourteenth Amendment rights and the underlying § 1983 claims against the City of Savannah should be dismissed.

     iv.    <u>*Fourth Amendment – Unlawful Search and Seizure*</u>

In their Amended Complaint, Plaintiffs now allege that Mr. Lee's Fourth Amendment rights were violated as the result of an unconstitutional search and seizure by Defendants Ferguson and Randle. Plaintiffs also appear to have asserted a related *Monell* claim against the City of Savannah. (Doc. 80 at ¶¶ 149-157). Because the Amended Complaint fails to adequately allege an unlawful search and seizure, there can be no *Monell* liability against the City of Savannah. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

The Fourth Amendment to the United States Constitution protects the right of persons to be free from unreasonable searches and seizures. "A 'seizure' does not occur every time a police officer interacts with a citizen." *United States v. Knight*, 989 F.3d 1281, 1286 (11th Cir. 2021). "Officers are free to 'approach individuals on the street or in other public places and put questions

to them if they are willing to listen.'" *Id.* (quoting *United States v. Drayton*, 536 U.S. 194, 200 (2002)). "In these consensual encounters, the officers need no suspicion because the Fourth Amendment is not implicated." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429 (1991)). It is only if the encounter becomes an investigatory *Terry* stop that the officer need reasonable suspicion. *Id.* An investigatory *Terry* stop occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968)).

In reviewing the undisputed body camera footage in this case, it is clear that the initial encounter between Mr. Lee and the defendant officers did not amount to a search and seizure under the Fourth Amendment. Although the defendant officers believed they had reason to stop Mr. Lee for violating O.C.G.A. § 40-6-96[4], the encounter never amounted to a *Terry* stop as neither Ferguson nor Randle informed Mr. Lee that he was being stopped due to a suspicion of criminal activity or that he was not free to go. In fact, the entirety of the conversation between Mr. Lee and Ferguson is as follows:

| | |
|---|---|
| **Ferguson**: | What's up man? |
| **Lee:** | Everything good? |
| **Ferguson:** | Yeah, everything's good. |
| **Lee:** | Yeah, I'm about to….I'm about to go to the house. |
| **Ferguson:** | Ok, sweet. |
| **Lee:** | Here's my uh…weapons license. |
| **Ferguson:** | Your weapons license? Alright where's it at? Where's it at? |

(Ex. A, Ferguson Body Camera Footage, 01:34 – 01:44).

---

[4] Contrary to Plaintiff's assertion, it is unlawful for any pedestrian to walk in a roadway where a sidewalk is provided and there are motor vehicles within 1,000 feet of the pedestrian. O.C.G.A. § 40-6-96(b)).

Like in *Bostick*, this initial encounter between Mr. Lee and Ferguson was seemingly amicable at first and Ferguson did not "by means of physical force or show of authority . . . restrain [Mr. Lee's] liberty." *Id.* at 434. *See also Knights*, 989 F.3d at 1286-87 (no seizure where police officer did not make a show of authority communicating to plaintiff that he was not free to leave); *Miller v. Harget*, 458 F.3d 1251, 1257-58 (11th Cir. 2006) (no seizure where police officer, despite blocking in plaintiff's car, did not do anything that would appear coercive to a reasonable person). Accordingly, the initial encounter between Mr. Lee and the defendant officers as alleged in the Amended Complaint did not give rise to an unlawful search and seizure under the Fourth Amendment

    *v.*      <u>Second Amendment – Retaliation for Exercising Right to Bear Arms</u>

Plaintiffs have alleged that the Mr. Lee was exercising his Second Amendment right to bear arms at the time of the incident and that Defendants retaliated against him for exercising such right. (*Id.* at ¶¶ 123-126). To state a retaliation claim, Plaintiffs must adequately allege that (1) Mr. Lee engaged in protected activity; (2) Mr. Lee suffered a deprivation likely to deter future protected activity; and (3) Mr. Lee's protected activity was a motivating factor in the Defendants' decision to retaliate. *See Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Based on the facts alleged in the Amended Complaint and as depicted in the body camera footage, Plaintiffs have failed to state a claim for relief for Second Amendment retaliation.

<u>*First,*</u> Plaintiff have failed to adequately allege that Mr. Lee was engaged in protected activity at the time of the incident. In *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. Chicago*, 561 U.S. 742 (2010), the U.S. Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms for self-defense. On June 23, 2022, the day before the incident at issue, the U.S. Supreme Court recognized, for the first time,

that this right includes the ability to carry a loaded gun in public for self-defense. *N.Y. State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 33 (2022). However, as the *Heller* Court recognized, the Second Amendment right "is not unlimited" and citizens are not free to "keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 554 U.S. at 626.

As an initial matter, the body camera footage clearly demonstrates that Mr. Lee was not carrying his weapon for the purpose of self-defense at the time of the incident. Plaintiffs have alleged that Mr. Lee "was in fear for his life" and exclaimed "You're about to kill me!" prior to the shooting to show that he was acting in self-defense, but Ferguson's body camera footage depicts otherwise. As shown in the footage, Ferguson does not take any aggressive or violent action toward Mr. Lee. Instead, Ferguson tells Mr. Lee that "everything is good" when initially approaching him. Further, it is clear from the footage that Mr. Lee set the confrontation into motion by stating "you're going to have to kill me" while unexpectedly brandishing his firearm for no justifiable reason. Because Mr. Lee was carrying his firearm for a purpose other than self-defense, there can be no violation of his Second Amendment right.

*Second*, Plaintiffs' Second Amendment retaliation claim fails because, apart from conclusory statements, there are no allegations that Mr. Lee's exercise of his right to bear arms was a motivating factor for the alleged retaliation. Instead, the body camera footage clearly demonstrates that Ferguson's use of force was in response to Mr. Lee's aggressive and threating behavior, not because Mr. Lee was simply carrying a firearm on his person as permitted by the Second Amendment. Put another way, Ferguson did not act in response to Mr. Lee's mere exercise of his right to bear arms, but rather in response to a perceived threat to himself and others.

*Last*, Defendants are not aware of any authority in the Eleventh Circuit, or elsewhere, suggesting that a police officer's use of excessive force on an individual bearing a firearm could

be considered retaliation against the individual's exercise of his or her Second Amendment right[5]. The City of Savannah does not dispute that the *Heller*, *McDonald* and *Bruen* recognize an individual's right to carry firearms in public for the purpose of self-defense. However, these cases involved challenges to local ordinances effectively placing blanket restrictions on the possession of firearms and do not stand for the creation of a cause of action under the circumstances of this case. Plaintiffs seek to severely expand the scope of the Supreme Court's holdings by asserting that a police officer retaliates against a suspected criminal's Second Amendment rights simply because the suspected criminal was carrying a firearm at the time of his or her arrest or detainment. Such circumstances were not contemplated by the Supreme Court in *Heller*, *McDonald* and *Bruen*, which dealt solely with alleged unconstitutional regulation of firearms by local and state governments.

For these reasons, the Court should dismiss Plaintiffs' Second Amendment retaliation claim against the City of Savannah.

### C.    Plaintiffs' negligence claim against the City of Savannah should be dismissed based on sovereign immunity.

Under Georgia law, "[t]he doctrine of sovereign immunity, also known as governmental immunity, protects all levels of governments from legal action unless they have waived their immunity from suit." *Wendelken v. Jenk, LLC*, 291 Ga. App. 30, 32 (2008). Georgia courts "have long recognized that sovereign immunity applies to all actions where the State or its departments or agencies is a party, and only the legislature has the authority to enact a law that specifically waives a municipality's sovereign immunity." *CSX Transp., Inc. v. City of Garden City*, 277 Ga.

---

[5] At a minimum, Ferguson and Randle would be entitled to qualified immunity due to the fact there is no clearly established law in the Eleventh Circuit, or elsewhere, that an alleged use of excessive force could give rise to a Second Amendment violation.

248, 249 (2003). In this regard, O.C.G.A. § 36-33-1 provides for a waiver of sovereign immunity

as follows:

> (a)     Pursuant to Article IX, Section II, Paragraph IX of the Constitution of the State of Georgia, the General Assembly, except as provided in this Code section and in Chapter 92 of this title, declares it is the public policy of the State of Georgia that *there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages.* A municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy. . . .
>
> (b)     Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. *For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable*.

(emphasis added). Thus, the aforementioned statutory language in O.C.G.A. § 36-33-1 provides

for waiver by a municipality only in limited circumstances[6].

Here, the Amended Complaint is devoid of any allegations that show the City of Savannah

has waived sovereign immunity as contemplated by O.C.G.A. § 36-33-1(b). In the State of

Georgia, "municipalities are not liable for negligence in the performance of governmental, as

opposed to their ministerial functions." *Gooden v. City of Atlanta*, 242 Ga. App. 786, 787 (2000).

The determination of whether a function is governmental or ministerial in character focuses

broadly on the nature, purpose, and intended beneficiaries of the function performed by the

municipal corporation. *See City of Atlanta v. Mitcham*, 296 Ga. 576, 582-583 (2015).

Governmental functions have traditionally been defined as those of a purely public nature,

intended for the benefit of the public at large, without pretense of private gain to the municipality.

---

[6] Plaintiffs do not allege that the City of Savannah purchased liability insurance to cover the incident alleged herein and thus the limited waiver provided in O.C.G.A. § 36-33-1(a) is not applicable.

*See Mitcham,* 296 Ga. at 578 (citing *Cornelisen v. City of Atlanta*, 146 Ga. 416, 419 (1917)). Ministerial functions, by comparison, are recognized as those involving the "exercise of some private franchise, or some franchise conferred upon [the municipal corporation] by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest." *Id.* at 576 (citing *Love v. City of Atlanta,* 95 Ga. 129, 131 (1894)).

Plaintiffs contend that the City of Savannah was negligent in (i) hiring and retaining Ferguson; and (ii) failing to provide proper medical supplies to its police officers. It is well established under Georgia law that the City of Savannah is entitled to sovereign immunity because both employment decisions and the medical care provided to individuals in police custody are purely governmental functions. *See Doss v. City of* Savannah, 290 Ga. App. 670, 675(2008) (sovereign immunity protects a municipality's employment decisions, including the retention, hiring and supervision of employees); *Mitcham*, 296 Ga. At 580 ("[T]he care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens."). Accordingly, the Court must dismiss Plaintiff's state law negligence claims against the City of Savannah based on sovereign immunity.

## IV.    CONCLUSION

Plaintiffs' Amended Complaint fails to set forth allegations sufficient to state a claim for relief against the City of Savannah under 42 U.S.C. § 1983 and Georgia law. Accordingly, the City of Savannah should be dismissed from this lawsuit with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted this 22nd day of April 2025.

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

*/s/Taylor L. Dove*

Bradley M. Harmon
Georgia Bar No. 327097
Taylor L. Dove
Georgia Bar No. 993210
*Attorneys for City of Savannah*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone:  912.236.0261
Facsimile:  912.236.4936
Email: bharmon@huntermaclean.com
Email: tdove@huntermaclean.com

**OFFICE OF THE CITY ATTORNEY**

*/s/ R. Bates Lovett*

R. Bates Lovett
Georgia Bar No. 459568
Jennifer N. Herman
Georgia Bar No. 327017

P.O. Box 1027
Savannah, Georgia 31402
Telephone:  912.525.3092
Facsimile:  912.525.3267
Email: blovett@savannahga.gov
Email: jherman@savannahga.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day served a copy of the within and foregoing

<u>**MEMORANDUM IN SUPPORT OF DEFENDANT THE MAYOR AND ALDERMEN**</u>

<u>**FOR THE CITY OF SAVANNAH'S MOTION TO DISMISS PLAINTIFFS' SECOND**</u>

<u>**AMENDED COMPLAINT**</u> by using the CM/ECF system which will send a notice of electronic

filing to all parties.

Respectfully submitted this 22nd day of April 2025.

**HUNTER, MACLEAN, EXLEY & DUNN, P.C.**

*/s/Taylor L. Dove*
Bradley M. Harmon
Georgia Bar No. 327097
Taylor L. Dove
Georgia Bar No. 993210
*Attorneys for City of Savannah*

200 East Saint Julian Street
Post Office Box 9848
Savannah, Georgia 31412-0048
Telephone: 912.236.0261
Facsimile: 912.236.4936
Email: BHarmon@HunterMaclean.com
Email: TDove@HunterMaclean.com

# EXHIBIT A

[A thumb drive containing the video footage was previously

filed with the Court and a digital copy provided to all parties]

# EXHIBIT B

[A thumb drive containing the video footage was previously

filed with the Court and a digital copy provided to all parties]

# EXHIBIT C



