UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

JEROME BLIDGE, *et al.*,            )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )    CV424-131
                                    )
ERNEST FERGUSON, *et al.*,          )
                                    )
        Defendants.                 )

# ORDER

Defendant the Mayor and Aldermen of the City of Savannah ("the City") move for the imposition of sanctions against Plaintiffs and their attorneys, William R. Claiborne and David J. Utter, "for their extrajudicial conduct in violation of Local Rule 11.2 and established case law of this Court." Doc. 46 at 1. Plaintiffs have responded, doc. 64, and the City has replied, doc. 69. The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636 and is ripe for disposition.

## Background

Plaintiffs Jerome Blidge, Marshell Bernice Lee, and the Estate of Saudi Arai Lee filed this lawsuit against the City of Savannah (sometimes "the City") and two Savannah Police Department officers arising from the shooting death of Saudi Arai Lee. *See generally* doc. 1.

Plaintiffs allege that Defendant Ernest Ferguson, then a Savannah Police Officer, encountered Saudi Arai Lee ("Lee") while he was walking in his neighborhood and, after an interaction, shot and killed him. *See* doc. 80 at 3-7.[1] Defendant Mackenzie Randle, also a Savannah Police Officer, was on the scene during the incident. *Id*. Plaintiffs allege Ferguson and Randle communicated with each other to plan a "pretextual stop" of Lee, purportedly for jaywalking. *Id*. at 3-4. Ferguson "engaged with Mr. Lee, who was walking on the sidewalk." *Id*. at 4. Randle pulled his police vehicle behind Lee. *Id*. Lee informed Ferguson that he was carrying a concealed firearm with a permit, and "began to hand Ferguson his wallet with his right hand to show him the permit." *Id*. Ferguson pointed his taser at Lee and Lee "turned and fled in the opposite direction of the officers." *Id*. Ferguson then "switched out his taser for his firearm" and as Lee was running away from the officers Ferguson fired multiple shots at him. *Id*. at 5. Lee died at the scene. *Id*. at 6. The incident was captured on Ferguson's body worn camera. *See* doc. 80 at 5; *see also* doc. 14-1 at 2; doc. 15.

---

[1] The Court authorized Plaintiffs' filing of their Second Amended Complaint. *See* doc. 79 (Order). Therefore, when discussing Plaintiffs' allegations, the Court cites to the Second Amended Complaint, doc. 80, as it is the currently operative pleading.

2

Plaintiffs filed this lawsuit on June 21, 2024. Doc. 1. On September 13, 2024, the City moved to dismiss Plaintiffs' original Complaint and attached as an exhibit a recording of Ferguson's body worn camera footage. *See* doc. 15. On September 25, 2024, a grand jury indicted Ferguson on charges of felony murder, aggravated assault, false imprisonment, and making false statements. Doc. 80 at 7. According to Plaintiffs, Ferguson entered a not guilty plea on November 19, 2024, and on November 25, 2024, his criminal defense attorney released "press statements" that Ferguson "committed no crime" and "acted in self-defense" because "Mr. Lee undoubtably pulled out a handgun and pointed it at him and his patrol partner." Doc. 64 at 3. Plaintiffs argue that these statements are untrue and "contradicted by the body worn cameras." *Id.* at 4. Therefore, on December 5, 2024, Plaintiffs' counsel, Mr. Claiborne, held a press conference to "show[ ] that the body worn camera—previously publicly filed by the City—never depicted Mr. Lee pointing his gun at Ferguson or Randle, nor posed any danger to any community member." *Id.*; *see also* doc. 46 at 2-3. This press conference is the basis of the City's request for sanctions.

Several local media outlets covered Plaintiffs' press conference. Doc. 46 at 2. The City argues statements made by Plaintiffs' counsel Will Claiborne and repeated in that coverage were inflammatory and "designed to inject bias into the jury pool." *Id.* In particular, the City identifies the following statements from Mr. Claiborne as problematic:

- "[T]here is no other word for what happened to [Lee] other than murder;"
- References to Ferguson as a "liar;"
- Mischaracterizations of the body worn camera footage; and
- "[J]ust like Trayvon Martin and Ahmaud Arbery, Saudi Lee was hunted down and murdered."

*Id.* at 2-3. The City asks the Court to impose sanctions against Plaintiffs and their counsel because of these extrajudicial statements. *Id.* at 7.

Plaintiffs' counsel opposes the sanctions request, arguing the Georgia Rules of Professional Conduct required him to take "corrective action" in response to the public statements made by Ferguson's criminal defense counsel. Doc. 64 at 4. Plaintiffs' counsel also recounts his efforts to reach agreement with all parties, including the City and Ferguson, "to cease publicly discussing the body camera and facts surrounding the

4

incident." *Id.* at 5. According to Plaintiffs, nobody responded to those efforts, and instead Plaintiffs identify extrajudicial statements made by the Mayor of Savannah during a press conference, where he commented: "I think it's a little disingenuous for this attorney, who's known for some sorts of theatrics, to take advantage of this family's grief to try to make his point." *Id.* at 5-6 (internal quotations and emphasis omitted). Plaintiffs also identify continued public commentary from Ferguson's criminal defense attorney. *Id.* at 6. Plaintiffs also point to media coverage of the City's Motion for Sanctions, which "led to the reignition of the controversy in the media both locally and nationally." *Id.*

## Legal Standard

The City invokes both Southern District of Georgia Local Rule 11.2 and the Court's inherent authority to support its request for sanctions. Doc. 46 at 3-6. Local Rule 11.2 provides:

> It is the duty of every lawyer or law firm associated with the case not to release or authorize the release of information or an opinion, which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent civil litigation with which he or his firm is associated, if there is a reasonable

> likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

S.D. Ga. L. Civ. R. 11.2. The Rule, by its express terms, only applies to lawyers and law firms associated with the case, and not to the parties directly. *Id.* A violation of this Local Rule can support the imposition of a sanction without a finding of bad faith on the part of the attorney. *See Lott v. Estes*, CV422-123, doc. 51 at 14 (S.D. Ga. June 29, 2023) ("Although it is well settled that a federal court must make a finding of bad faith to sanction an attorney under its inherent powers . . . this Court has never extended this requirement to sanctions imposed pursuant to Local Rule 11.2, and the Court declines to do so here.").

As for the Court's inherent power, the Eleventh Circuit has recognized that "'[c]ourts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). The Court may exercise this inherent authority to sanction a party, and not just an attorney. *See, e.g.*, *Mai v. Nine Line Apparel, Inc.*, 2019 WL 5092478, at *3 (S.D. Ga. Oct. 10, 2019). "This power 'must be exercised with restraint

and discretion' and used 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (quoting *Chambers*, 501 U.S. at 44-45). "A court may exercise this power to sanction the willful disobedience of a court order, and to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal citations and quotation marks omitted).

The key element to unlocking the court's inherent ability to sanction is a finding of bad faith. *Purchasing Power*, 851 F.3d at 1223; *see also Thomas*, 293 F.3d at 1320 ("[B]efore a court can impose sanctions against a lawyer under its inherent power, it must find that the lawyer's conduct constituted or was tantamount to bad faith." (internal quotation and citation omitted)). Additionally, the Court's imposition of any sanction must comport with due process by providing the individual subject to possible sanction with proper notice and an opportunity to be heard. *Thomas*, 293 F.3d at 1320-21. Notice can come from the party seeking sanctions, from the court, or from both, and the accused must be given an opportunity to respond to the invocation of such sanctions and to justify his actions. *In re Mroz*, 65 F.3d 1567, 1575-76 (11th Cir. 1995).

7

"In assessing whether a party should be sanctioned, a court examines the wrongdoing in the context of the case, including the culpability of other parties." *Purchasing Power*, 851 F.3d at 1225.

## Analysis

The Court first addresses Plaintiffs' counsel's behavior through the lens of Local Rule 11.2.  As this Court has made clear, cases before it "are not to be tried in the media." *Lee v. Effingham Cnty. Bd. of Comm'rs*, CV412-028, doc. 23 at 4 (S.D. Ga. Mar. 23, 2012).  Nevertheless, Plaintiffs' counsel, during the pendency of this case, arranged for a press conference to bring public attention to the footage from Ferguson's body worn camera.  A "reasonable person" would expect for the information provided during the press conference to "be disseminated by means of public communication," S.D. Ga. L. Civ. R. 11.2, since it was covered by most of the major local media outlets.  *See Family demands justice after bodycam video details deadly Savannah Police shooting*, WJCL (Dec. 5, 2024), https://www.wjcl.com/article/body-camera-footage-saudi-lee/63097712; *Attorney for Saudi Lee's family release bodycam footage of deadly officer involved shooting*, WTOC (Dec. 4, 2024), https://www.wtoc.com/2024/12/04/saudi-lees-family-hold-press-

conference-after-former-officer-pleads-not-guilty/; *Family of Saudi Lee releases body cam footage of fatal shooting*, WSAV (Dec. 4, 2024), https://www.wsav.com/news/local-news/family-of-saudi-lee-release-body-cam-footage-of-fatal-shooting/. Therefore, to determine whether Plaintiffs' counsel's conduct violated Rule 11.2, the Court must determine whether there was a reasonable likelihood that the information or opinions disseminated during the press conference would "interfere with a fair trial or otherwise prejudice the due administration of justice." S.D. Ga. L. Civ. R. 11.2.

During the press conference, Plaintiff's counsel did not just identify the already-public video footage and provide copies to the gathered media, but offered commentary about the content of that footage, including that it showed that Mr. Lee was not committing a crime, and was "hunted down and murdered." *See, e.g.*, *Attorney for Saudi Lee's family release bodycam footage of deadly officer involved shooting*, available at https://www.wtoc.com/2024/12/04/saudi-lees-family-hold-press-conference-after-former-officer-pleads-not-guilty/, at 2:17-2:28. A contested issue in this case is whether Ferguson's actions were reasonable based, in part, on the incident as it was captured by his body-

9

worn camera. *See, e.g.*, doc. 86-1 at 6-7; doc. 94 at 8-11. Plaintiffs' counsel's commentary strays into impermissible territory, offering counsel's arguments and opinions about the legal consequences of the incident as depicted on the footage. *See, e.g.*, *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1073-74 (1991) (finding that a lawyer's "extrajudicial statements pose a threat to the fairness of a pending proceeding since lawyers' statements are likely to be received as especially authoritative."). He does not dispute that he was seeking to alter public perception of the facts of the case by offering a rebuttal to Ferguson's counsel's comments. His additional commentary is, as the City insists, a violation of the Court's Local Rule. Therefore, to the extent the City asks the Court to find that Plaintiffs' counsel violated the Rule, its Motion is **GRANTED**, in part. Doc. 46.

Plaintiffs' counsel's insistence that his public commentary was necessary to rebut Ferguson's criminal counsel's commentary does not alter the determination that Mr. Claiborne violated Local Rule 11.2, since the Rule does not contain any exemption for commentary intended to "set the record straight." However, the nature of his violation does not require the Court to invoke its disciplinary authority against Mr. Claiborne.

More importantly, Plaintiffs' counsel's violation of the Rule does not support a determination that he should be sanctioned. Though counsel engaged in impermissible commentary, his explanation for the purpose of that commentary, along with his description of his efforts to ensure that all parties and counsel in this case refrain from making any further public commentary during its pendency to limit "further unneeded press coverage," *see* doc. 64 at 5-6, demonstrates a sanction is apparently unnecessary to ensure counsel's compliance with the Rule moving forward.

As to imposing sanctions beyond Rule 11.2, the Eleventh Circuit has made clear that the Court's inherent authority to impose sanctions "must be exercised with restraint and discretion." *Purchasing Power*, 851 F.3d at 1223. It requires subjective bad faith on the part of the offending party. *Id.* Plaintiffs' response to the Motion for Sanctions demonstrates that their counsel's violation of this Court's Local Rule was not borne of bad faith, but a mistaken belief that his actions were justified by the conduct of Defendant Ferguson's criminal defense counsel in making public statements characterizing Ferguson's at-issue conduct. *See* doc. 64 at 11-12. Therefore, while the City is correct that Mr. Claiborne

11

violated Local Rule 11.2 when he made extrajudicial statements during his press conference, it has not shown that he did so in bad faith. Therefore, the City's request that Plaintiffs and their counsel be sanctioned for their commentary during the press conference is **DENIED**. Doc. 46, in part.

Plaintiffs seek attorney's fees for the time counsel spent responding to the City's Motion. *See* doc. 64 at 17-18. Because the City's Motion is granted, in part, as to Plaintiffs' counsel's violation of the Court's Local Rule, Plaintiffs' request for attorney's fees is **DENIED**. Doc. 64 at 18.

Given the publicity surrounding this lawsuit, and the Motion presently before the Court, Plaintiffs' counsel is warned that he must tread carefully. Though disciplinary proceedings are not warranted now, the Court might not look with such leniency on any subsequent violation of its Local Rule. The other parties are similarly cautioned that extrajudicial statements or commentary about the issues in this lawsuit will be disfavored. Echoing Judge Wood, "[t]he Court fully expects [all] parties to conduct themselves in a way that promotes a fair judicial process and ensures this case is decided solely on the merits. . . . The Court is confident that the litigants and their counsel will be mindful of

these admonishments." *Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty., Ga.*, 2021 WL 10724822, at *2 (S.D. Ga. Sept. 2, 2021).

## Conclusion

For the foregoing reasons, The Mayor and Aldermen of the City of Savannah's Motion for Sanctions is **GRANTED**, in part, and **DENIED**, in part. Doc. 46. Though Plaintiffs' counsel violated the Court's Local Rule, the Court will not levy sanctions against Plaintiffs or their counsel. Plaintiffs' request for attorney's fees is **DENIED**. Doc. 64.

**SO ORDERED** this 9th day of July, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA